UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>RMA STRATEGIC OPPORTUNITY FUND, LLC,<br><br>Debtor. | CHAPTER 7<br><br>CASE NO. 17-13328-FJB |

## CHAPTER 7 TRUSTEE'S MOTION TO ENFORCE AUTOMATIC STAY

Mark G. DeGiacomo, as Chapter 7 trustee (the "Trustee") of the bankruptcy estate of RMA Strategic Opportunity Fund, LLC (the "Debtor") submits this motion pursuant to Bankruptcy Code § 362(a) to enforce the automatic stay in this case. The Trustee seeks an order declaring that the litigation brought by Clarence Owens ("Owens"), a bankruptcy estate creditor, against Raymond Montoya, Alma Montoya, Raymond Montoya II, Deepa Bhatt, Ross Montoya, Ryan Montoya, George Bedarf, Maria Stavropoulos, Aimee Montoya, Research Magnate Advisors, LLC, Resource Managed Assets, LLC (collectively, the "Montoya Defendants") in the Massachusetts Superior Court (the "State Court Action")[1] violates the automatic stay and that any relief obtained in the State Court Acton is void *ab initio* as against the Montoya Defendants.

On September 5, 2017, three creditors filed an involuntary petition against the Debtor pursuant to Chapter 11 of the Bankruptcy Code. [Docket No. 1]. On October 6, 2017, this Court entered an Order for Relief. [Docket No. 4]. On November 15, 2017, the Court entered an order converting this case to Chapter 7. [Docket No. 37]. On November 15, 2017, the Trustee was appointed as the Chapter 7 trustee of this bankruptcy estate. [Docket No. 40]. Pursuant to 11

---

[1] A true and accurate copy of the Complaint in the State Court Action is attached hereto as <u>Exhibit A</u>.

1

9315720v1

U.S.C. § 704, the Trustee is charged with, among other things, collecting and reducing to money the property of the bankruptcy estate. Property of the bankruptcy estate includes causes of action, including the Trustee Actions, as described below.

### A. The Trustee Is Seeking Recovery of Generalized Damages Through Three Separate Lawsuits Against All But Two of the Montoya Defendants

The Trustee has initiated three separate lawsuits, which, collectively, seek relief against all but two of the Montoya Defendants.[2] On February 12, 2018, the Trustee filed an adversary proceeding in this case (Adversary Proceeding No. 18-01019-FJB), against defendants Raymond Montoya, Alma Montoya, Ross Montoya, Ryan Montoya, Research Magnate Advisors, LLC, Resource Managed Assets, LLC and RMA Group, Inc. (the "Massachusetts Adversary"). On January 25, 2018, the Trustee also filed a lawsuit against Aimee Montoya in the United States District Court for the Central District of California (the "California Action"). A true and accurate copy of the complaint in the California Action is attached hereto as Exhibit B. Finally, on February 23, 2018, the Trustee filed a lawsuit in the United States District Court for the Northern District of Illinois in which he named as defendants Raymond Montoya II and Deepa Bhatt (the "Illinois Action"). A true and accurate copy of the complaint in the Illinois Action is attached hereto as Exhibit C. The California Action and the Illinois Action are based

---

[2] The only two defendants who are named in the State Court Action but not in the Trustee Actions are George Bedarf and Maria Stavropoulos. Owens alleges that Stavropoulos "is or has been a director of [the Debtor]" and Stavropoulos and Bedarf "are or have been directors of Resource Managed Assets, LLC, which "serves as the managing member of [the Debtor]." See State Court Action ¶¶ 11, 12 & 13. Taking these allegations as true for purposes of this Motion, it is the Trustee who has standing to assert claims against Stavropoulos and Bedarf, in their capacities as directors, in order to recover for the estate and all of its creditors the general damages that Owens is seeking for himself. The Trustee's investigation into potential claims against Stavropoulos and Bedarf is continuing, and the Trustee has not abandoned any such claims. Unless and until the Trustee decides not to pursue such claims, it would be premature, at a minimum, for any individual creditor to attempt to assert these claims. In the State Court Action, Owens also asserts a claim for unjust enrichment against all defendants, including Stavropoulos and Bedarf, based on the alleged distribution of customer funds to them as part of the defendant group as a whole. See State Court Action ¶¶ 75 & 76. Those claims are also property of the estate which the Trustee has not abandoned.

on the same facts as the Massachusetts Adversary. See California Action, ¶¶ 13-57; Illinois Action, ¶¶ 15-65. Together, the Massachusetts Adversary, the California Action and the Illinois Action are referred to herein collectively as the "Trustee Actions."

Through the Trustee Actions, the Trustee seeks to recover, on behalf of the bankruptcy estate, all damages caused to the bankruptcy estate and its creditors by the named defendants. The general basis of the Trustee Actions, as excerpted from the Massachusetts Adversary, is as follows:

- An investment in the RMA Strategic Opportunity Fund, LLC (the "Debtor") was billed to investors as an opportunity to invest in a multi-billion dollar hedge fund that consistently outperformed the S&P 500 Index. In fact, it was nothing more than a Ponzi scheme that was operated as a slush fund for the benefit of defendant Raymond Montoya ("Raymond") and his immediate family. Massachusetts Adversary, ¶ 1.

- To carry out the fraud, Raymond and others utilized a web of entities and bank accounts to move investor money around, repay earlier investors with new investor money, and divert a substantial amount of the invested funds to themselves in the form of direct distributions and payments of their personal expenses to third parties. In all, between January 1, 2014 and the present, approximately $30 million was received from investors. Massachusetts Adversary, ¶ 2.

- On August 1, 2017 a Criminal Complaint was filed against Raymond in the United States District Court for the District of Massachusetts alleging that he committed wire fraud and mail fraud in his operation of the Debtor. Of the more than $30 million received from investors, only a fraction of that amount remained at the time of Raymond's arrest. This adversary proceeding attempts to recover funds that were

3

9315720v1

diverted from the Debtor to Raymond and certain immediate family members. Massachusetts Adversary, ¶ 3.

- On June 8, 2017, the Massachusetts Securities Division Enforcement Section filed an Administrative Complaint against Raymond, RM Advisors and RM Assets, alleging that they had violated Massachusetts securities laws by operating the Debtor as "a fraudulent hedge fund" whereby he raised money by misleading investors while using the money for his own personal benefit and that of his immediate family and to make Ponzi-like repayments to certain other investors. Massachusetts Adversary, ¶ 54.

- The Trustee additionally alleges in detail how the Debtor and its affiliates were operated as a scheme to defraud investors and that the Debtor's investors were continually and materially misled. See Massachusetts Adversary, ¶¶ 26-45. The Trustee further alleges in detail how funds intended for investment in the Debtor were systemically misappropriated by the Montoya family. See Massachusetts Adversary, ¶¶ 46-55.

- As described throughout the Trustee Actions, each of the Montoya Defendants benefited improperly and enormously from the Ponzi scheme. The Trustee alleges in detail the specific transfers to or for the benefit of the Montoya family members. See Massachusetts Adversary, ¶¶ 56-69.

- Finally, the Trustee alleges that the Debtor was insolvent at all times and perpetrated a fraud on existing and future creditors. See Massachusetts Adversary, ¶¶ 70-73.

Through the aforementioned allegations, the Trustee asserts claims for recovery against the defendants in the Massachusetts Adversary for fraudulent transfer (Counts I-IV), unjust enrichment (Count V), breach of duty of care (Count VI), breach of duty of good faith (Count

4

9315720v1

VII), declaratory judgment (Counts VIII-X), and trustee process (Counts XI-XII).[3] Through these counts, the Trustee is seeking, among other things, (a) recovery of the value of all money and property transferred to the individual named Montoya Defendants (¶¶ 80, 86, 94, 104, 108), (b) recovery of the "more than $30 million in damages" that Raymond and Ross' breaches of fiduciary duty caused the Debtor and its investors to suffer (see ¶¶ 113 & 118), and (c) a declaration of liability against the entity defendants in order "to remedy an injustice and fraud upon the Debtor's creditors." See ¶¶ 123, 128 & 133.

On February 20, 2018, as security for the Trustee's expected judgment in the Massachusetts Adversary, this Court issued attachments against the goods or estates of Raymond and Alma Montoya in the amount of $5,000,000. See A.P. Docket Nos. 36 & 37. On February 20, 2018, the Trustee recorded the attachments at the Suffolk County Registry of Deeds against real estate standing in the name of Raymond and Alma Montoya that is located at 26 High Rock Way, Boston, Massachusetts (the "Allston Real Estate"). On February 20, this Court also issued preliminary injunctions against Raymond, Alma, Ross and Ryan Montoya. See A.P. Docket Nos. 40 & 41. In addition, in connection with the Illinois Action, on March 1, 2018 the Trustee recorded a lis pendens against real property titled to Raymond Montoya II and Deepa Bhatt located at 1605 Oak Wood Road, Northbrook, Illinois.

### B. The State Court Action Is Duplicative of the Trustee Actions and Impermissibly Interferes with the Trustee's Administration of Bankruptcy Estate Property

The State Court Action contains claims that are duplicative of the Trustee Actions against the same defendants arising out of the RMA Ponzi scheme. Owens' action alleges the same type of harm that every other investor has suffered – i.e., the loss of his investment in connection with

---

[3] In the California Action and the Illinois Action, the Trustee seeks recovery against the named defendants on claims of fraudulent transfer and unjust enrichment that parallels the relief the Trustee seeks against the named defendants in the Massachusetts Adversary.

5

9315720v1

the Ponzi scheme. In so doing, the State Court Action threatens to disrupt and impede the orderly administration of the bankruptcy estate. In the introduction to the State Court Action, Owens confirms the duplicative nature of the State Court Action, alleging as follows:

> Raymond K. Montoya and his associates swindled investors in a Ponzi scheme. According to an administrative complaint filed by the Secretary of the Commonwealth, Montoya accepted $30 million from investors but only placed about half the money into brokerage accounts. He used investors' money to buy expensive cars and pay for real estate and credit card expenses for himself and members of his family. Plaintiff Clarence Owens seeks to recover his investment from the individuals who participated in, and benefited from, the scheme.

See State Court Action, Introductory Paragraph.

Owens then refers liberally throughout his complaint to the Secretary of the Commonwealth's administrative complaint. See State Court Action, ¶¶ 14 – 24 & Exhibit A thereto. Through that administrative complaint, the Secretary alleges, among other things, that Raymond Montoya "and associated entities have solicited tens of millions of dollars of investor funds under false pretenses. Montoya has used this money for his own personal benefit and that of his immediate family, to trade with only limited success, and to make Ponzi-like payments to other investors." State Court Action ¶ 17. Even a cursory review of the Secretary's administrative complaint, on which the State Court Action relies, confirms that RMA did not just make misrepresentations to Owens alone in connection with his $100,000 investment. Instead, the Secretary alleges a common pattern of misrepresentations, and resulting harm, to all investors generally.

Owens then alleges: "Between 2014 and the present, Montoya and his associates received about $30 million from investors but transferred less than $15,830,000 to brokerage accounts they controlled. The rest of the money was used for purported capital distributions to other investors, purported operational expenses, and personal expenses for Montoya and

6

members of his family." State Court Action, ¶ 21. Owens further alleges that the specific funds that the Montoya Defendants received "were all or mostly received from investors." State Court Action, ¶ 22 & 23.

Owens then alleges that he invested $100,000 in RMA based on certain misrepresentations made by Ross Montoya and George Bedarf, who were soliciting investments in RMA. See State Court Action, ¶¶ 27, 28, 34, 35, & 43. Owens' investment came at a time when RMA was continuing to solicit and receive investments from other individuals, based on their misrepresentations and for the purpose of diverting a portion of the funds for personal expenses for Montoya and members of his family. As Owens alleges, "Between March 1, 2017 and approximately June 8, 2017, Montoya and his associates took $1.8 million from investors including plaintiff Owens." State Court Action, ¶ 24.

Through the State Court Action, Owens seeks to recover his $100,000 investment in RMA from one or more of the Montoya Defendants. He alleges various counts for conversion, (Count I), fiduciary breach (Count II), fraud (Counts III – V), securities fraud (Count VI), unjust enrichment (Count VII), declaratory judgment (Count VIII) and violation of Mass. Gen. Laws c. 93A (Count IX).

C. **Owens' Attachment Motions in Connection with the State Court Action Were Based Upon Claims that Only the Trustee has Standing to Pursue on the Bankruptcy Estate's Behalf**

In connection with the relief requested through the State Court Action, Owens also sought attachments against the real property owned by certain of the individual Montoya Defendants. In support of these attachment requests Owens asserted:

> Raymond K. Montoya ("Montoya") swindled Clarence Owens out of $100,000 in a Ponzi scheme. Each of the defendants received funds from the scheme or actively participated in it, and Owens seeks to prevent them from dissipating or hiding assets until they pay

7

9315720v1

> him. *Granting prejudgment relief will also preserve assets for other investors, who have collectively lost millions of dollars.*

See Exhibit D hereto, Memorandum in Support of Plaintiff's Motions for Attachment and Preliminary Injunctions at p. 1 (emphasis added).

Owens further argues that "Raymond Montoya operated a Ponzi scheme that defrauded investors out of over $14 million. Plaintiff Clarence Owens was one of the last people Montoya swindled before the FBI caught up with him. Each of the defendants actively participated in the scheme or received some of the stolen money." *Id.* In further support of his request for attachments and injunctions, Owens argues: "Given the strong case two government agencies have made against Montoya, there is a strong likelihood that Owens will be successful. Montoya took money from people, promising to invest it, and mainly he did not do so. He squandered it or gave it to family members. He was generous with other people's money, and all the defendants benefitted. Ross was his partner, and he and Bedarf actively participated in the scheme to defraud Owens." *Id.* at 4. Finally, Owens argues, "This is not, candidly, the sort of case in which a court generally considers the public interest. However, *there will be an incidental benefit to other defrauded investors* if the court prevents the defendants from spending or hiding money. *Owens only lost $100,000. Defendants stole millions.*" *Id.* (emphasis added).

On February 20, 2018, the Massachusetts Superior Court allowed Owens' attachment motions as to defendants Raymond Montoya, Alma Montoya, Raymond Montoya II and Deepa Bhatt. On March 16, 2018, Owens recorded the attachments as to Raymond Montoya and Alma Montoya in the Suffolk County Registry of Deeds against the Allston Real Estate. On information and belief, Owens is also attempting to record the attachment in Illinois against real estate owned by Raymond Montoya II and Deepa Bhatt.

8

In essence, Owens' claims rely principally on the same general allegations as are contained in the Trustee Actions – that RMA was a Ponzi Scheme; that the Debtor's investors were continually and materially misled; and that investor funds were funneled to Raymond Montoya's family members. Compare State Court Action ¶¶ 17-24 and Massachusetts Adversary ¶¶ 26-73. By making a claim based on RMA's business model of misrepresentations designed to induce investment, Owens does not allege any conduct other than what the Trustee alleges in his Complaint. The damages Owens seeks are thus based entirely on his reliance on RMA's misrepresentations and RMA's misuse of investor funds, in general, and are entirely duplicative of the Trustee's allegations in support of his claim for recovery on behalf of the bankruptcy estate and all of its creditors. While some of the details of his alleged communications with RMA agents or representatives (specifically Ross Montoya and George Bedarf) may differ from those of other RMA investors, Owens does not allege any unique facts that would distinguish him from any other purported victim of the RMA Ponzi scheme. Instead, Owens seeks money from the Montoya Defendants in the form of a return of his investment that he should be seeking—and, in fact, is seeking—from the Debtor's bankruptcy estate.

### D. **Owens Has Filed a Proof of Claim Against the Bankruptcy Estate and, if allowed, that Claim will Entitle Owens to Participate in any Distributions from the Estate as Provided by the Bankruptcy Code**

On April 2, 2018, Owens filed a proof of claim in the Debtor's bankruptcy case that asserts a general unsecured claim in the amount of $100,000, thereby seeking repayment of the same investment funds that he seeks to recover in the State Court Action. See Claim 76-1, a true and accurate copy of which is attached hereto as Exhibit E. If this claim is allowed, Owens will have the right to share in any available distribution following the Trustee's complete administration of the bankruptcy estate. Owens nonetheless continues to prosecute the State

9

Court Action in an attempt to recover for himself a portion of the same general damages the Trustee is seeking to recover through the Trustee Actions for the benefit of all bankruptcy estate creditors, including Owens.

Allowing Owens' competing State Court Action to proceed would frustrate the purposes of the Bankruptcy Code by permitting a creditor who filed his own separate lawsuit potentially to recover more than other creditors of the Debtor, while at the same time divesting the Trustee of his power to marshal bankruptcy estate assets for distribution to holders of allowed claims in the order of priority provided by the Bankruptcy Code. Owens should not be allowed to obtain a preferential recovery or leapfrog over other bankruptcy estate claimants. Instead, this Court should determine that Owens' State Court Action violates the automatic stay and any relief obtained in connection therewith is void *ab initio*.

## ARGUMENT

Both the Trustee and Owens allege that the Montoya Defendants are liable for losses to RMA's investors, including Owens, in connection with RMA's fraud and misuse of investor funds. However, only the Trustee has standing to pursue these general claims. Because the State Court Action is duplicative of the Trustee Actions, it violates the automatic stay. As such, the State Court Action cannot be allowed to continue and any relief obtained in connection therewith should be declared void *ab initio*.

### A. The Automatic Stay Applies

Section 362(a)(3) of the Bankruptcy Code provides that the filing of a petition under section 303 "operates as a stay, applicable to all entities of . . . any act to obtain possession of property of the estate . . . or to exercise control over property of the estate . . . ." See 11 U.S.C. §

362(a)(3). "Property of the estate, in turn, includes 'all legal or equitable interests of the debtor in property as of the commencement of the case,' 11 U.S.C. § 541(a)(1), . . . including causes of action possessed by the debtor at the time of filing." *Picard v. Stahl (In re Madoff)*, 443 B.R. 295, 311 (Bankr. S.D.N.Y. 2011). "The automatic stay is one of the most fundamental bankruptcy protections and applies broadly to 'give[ ] the debtor a breathing spell' and to prevent creditors from 'obtain[ing] payment of the[ir] claims in preference to and to the detriment of other creditors.'" *Id.*

### B. The Trustee Has Exclusive Standing to Bring the Claims that Owens Asserts in the State Court Action

As to the relief sought from the Montoya Defendants, the State Court Action is completely duplicative of the Trustee Actions. In particular, Owens alleges that RMA was operated as a Ponzi Scheme, that RMA representatives misled potential investors – of which Owens was one of many – into providing investment funds to RMA, that RMA improperly diverted a substantial portion of those funds to the Montoya Defendants for their personal benefit, and that Owens, as with all other investors, suffered damages by virtue of the RMA's misuse of investor funds. This is precisely what the Trustee has pled against the defendants in the Trustee Actions. See, e.g., Massachusetts Adversary ¶¶ 21-73. The State Court Action therefore cannot proceed simultaneously with the Trustee Actions.

The Court's analysis from the *Picard v. Stahl* case is instructive here as it addressed a nearly identical situation of claims brought by individual creditors against Madoff family members which were found to violate the automatic stay since the Trustee was the only person with standing to pursue the claims. As the Court in *Picard* noted, "The Second Circuit has held that '[i]f a claim is a general one, with no particularized injury arising from it, and if that claim

11

9315720v1

can be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.'" *Id., citing St. Paul Fire & Marine Ins. Co. v. Pepsi Co. Inc.*, 884 F.2d 688, 701 (2d Cir. 1989); *see also In re The 1031 Tax Group, LLC*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008)("To determine standing, the Court must look to the underlying wrongs as pleaded in the complaint and whether the plaintiff alleges a particularized injury.").

"In order to assert such a claim independently of the administration of the bankruptcy case, a creditor must have suffered an injury 'significantly different' from the injuries to creditors in general." *Id., citing In re Sage Enter., Inc.*, No. 04–B–05548, 2006 WL 1722582, at *15 (Bankr.N.D.Ill. Apr. 28, 2006) (*quoting Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir.1989)) ("[W]here the creditors' injury, while having some personal elements, overlaps with injury suffered by other creditors ... the question to be answered is whether the injury to the creditor is 'significantly different' from the injuries to other creditors in general."). As the *Picard* Court concluded, "[a] trustee's exclusive ability to bring causes of action that generally affect all creditors fosters the goals of the automatic stay by promoting orderly resolution of claims and preventing single creditors from achieving preferential recoveries." *Id.*

Here, Owens alleges the same wrongdoing as to the Montoya Defendants in the State Court Action as the Trustee alleges in the Trustee Actions; i.e., use of misrepresentations to solicit investor funds and improper diversion of funds away from RMA and to the Montoya Defendants. Owens also alleges no injury other than the injury common to all investors stemming from the Ponzi scheme. Where Owens alleges diversion and loss of his investment, the Trustee likewise alleges diversion and loss of the investments of all investors, including Owens. The State Court Action thus asserts claims for transfers of investor funds in violation of

12

duties owed to all investors and creditors equally, the breach of which resulted in losses to all RMA creditors. *See Id.* at 312.

As noted above, throughout his papers in the State Court Action, Owens pleads and argues harm to all investors generally. See State Court Action, ¶¶ 21-24; Attachment Motion, p. 1 & 4. A further example of the common duties Owens alleges is found in Count II of the State Court Action. There, Owens alleges that Defendants "occupied a position of trust and confidence and handled funds of Owens (¶ 53), Defendants had a fiduciary duty to Owens (¶ 54), and Defendants breached their fiduciary duty, causing harm (¶ 55). Any investor could have made these allegations. In fact, the Trustee has done so on the bankruptcy estate's behalf in Counts VI and VII of the Massachusetts Adversary.

Further, to the extent Owens bases his fraud claims on any of the Defendants' misrepresentations, he admits in his own complaint that those representations were not made solely to Owens. In fact, Owens repeatedly alleges that RMA made the misrepresentations that he complains about to him *and to others*. See State Court Action, Count III ("Raymond, Advisors and Assets made the following representations to Owens, *among others*")(emphasis added); Count IV ("Ross made the following representations to Owens, *among others*")(emphasis added); Count V ("Bedarf made the following representations to Owens, *among others*")(emphasis added). Such broadly distributed misrepresentations therefore failed to result in any separate and particularized harm to Owens. *See Picard*, 443 B.R. at 312 ("To the extent that misrepresentations are alleged, they were not made directly and solely to the Third Party Plaintiffs and therefore failed to result in any separate and particularized harm.").

13

Owens' unjust enrichment claim in Count VII suffers from the same defect. Specifically, Owens alleges that "Raymond and his associates distributed *the funds of others* to the named defendants." State Court Action, ¶ 75 (emphasis added). In this count, Owens does not even state that *his* funds were "distributed" to any of the defendants, further belying any possible contention that Owens suffered any particularized harm distinct from that suffered by all creditors.

Owens' remaining claims for conversion (Count I), securities fraud (Count VI), and G.L. c. 93A (Count IX) all are variations of the same general claim for recovery based on Defendants' misrepresentations and diversion of investor funds. Changing the labels on these claims does not make them personal to Owens. This Court should reject this type of artificial distinction. As the *Picard* Court noted:

> To the extent that certain causes of action set forth by the Third Party Plaintiffs in their complaints differ in name from those alleged in the Trustee's Madoff Complaint, those distinctions are irrelevant. Whether sounding in bankruptcy, state law or common law, and whether purporting to recover fraudulent transfers or tort damages, the Third Party Actions seek to recover potential estate assets to redress harms common to all victims of Madoff's massive Ponzi scheme that, consistent with the purposes of the automatic stay, belong exclusively to the Trustee.

*Picard*, 443 B.R. at 314. The *Picard* Court concluded that the automatic stay prohibited substantially identical creditor claims from proceeding in the Madoff bankruptcy case in parallel to pending actions brought by the Trustee in that case. In doing so, the *Picard* Court ruled that "allowing the Third Party Plaintiffs to proceed against the Madoff Defendants for their own independent recoveries on these grounds would 'convert the bankruptcy proceeding into a race to the courthouse,' and effectively 'derail the bankruptcy proceedings.'" *Id., citing Fisher v. Apostolou*, 155 F.3d 876, 883 (7th Cir.1998). The pendency of the State Court Action presents

14

9315720v1

the same risk here. The automatic stay should therefore be enforced to prevent the State Court Action from proceeding further.

### C. The State Court Action Threatens to Undermine the Claims Administration Process

The Bankruptcy Code expressly provides for the manner of distribution of money following the Trustee's administration of bankruptcy estate property. The State Court Action is essentially an attempt by Owens to satisfy his claim relating to his investment in RMA by circumventing the claims determination and allowance process and to take for himself funds that otherwise would be recoverable by the Trustee and distributed to allowed claimants pursuant to the provisions of the Bankruptcy Code. Indeed, Owens plainly alleges that the damages he seeks through the State Court Action consist of the same $100,000 he seeks through the proof of claim he filed in the bankruptcy case. *Compare* State Court Action, Request for Relief, p. 13 and Owens' Proof of Claim. Thus, the State Court Action is nothing more than an attempt by a general unsecured creditor to leapfrog over other creditors to obtain a greater share of his claim against RMA than he otherwise might receive. This Court should not condone Owens' attempted end-run around the well-established protocol for the distribution of bankruptcy estate property provided by the Bankruptcy Code.

### D. The State Court Action Is Void *Ab Initio*

Through the automatic stay, the Bankruptcy Code expressly prohibits a creditor from attempting to exercise control over property of the Debtor's estate, including, in this instance, the claims in the Trustee Actions. "[A]ctions taken in violation of the stay are void and without effect." See *Picard*, 443 B.R. at 314, *quoting FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 137 (2d Cir.1992). Here, Owens has acted in violation of the automatic stay by

15

asserting claims seeking recovery of the same damages in the State Court Action — from the same defendants and based on the same operative facts—as the Trustee seeks on behalf of the estate and all creditors through the Trustee Actions. Because the claims in the State Court Action violate the automatic stay, those claims, and any prior orders issued in connection with those claims, should be held void *ab initio*.

### Relief Requested

For all the foregoing reasons, the Trustee requests that the Court:

(1) enter an order enforcing the automatic stay under Section 362(a) against Clarence Owens in his capacity as a party in the State Court Action;

(2) declare that the State Court Action, and any and all orders issued by the Massachusetts Superior Court in connection therewith, are void *ab initio* and are of no continuing effect; and

(3) order that Clarence Owens take such steps as necessary to effectuate this Court's order, including, but not limited to, voluntarily dismissing the State Court Action and filing all documents necessary to withdraw or dissolve any attachment recorded in any registry of deeds or other recording office against any and all property, including specifically the Allston Property, held in the name of any of the Montoya Defendants.

Respectfully submitted,
MARK G. DEGIACOMO, CHAPTER 7
TRUSTEE OF RMA STRATEGIC
OPPORTUNITY FUND, LLC,

By his attorneys,


*/s/ Jonathan M. Horne*
Mark G. DeGiacomo, Esq., BBO No. 118170
Michael P. Connolly, Esq., BBO No. 637642
Jonathan Horne, Esq., BBO No. 673098
Murtha Cullina LLP
99 High Street
Boston, Massachusetts 02110
617-457-4000 Telephone
617-482-3868 Facsimile
mdegiacomo@murthalaw.com
mconnolly@murthalaw.com
jhorne@murthalaw.com

9315720v1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>RMA STRATEGIC OPPORTUNITY FUND, LLC,<br><br>                Debtor. | CHAPTER 7<br><br>CASE NO. 17-13328-FJB |

CERTIFICATE OF SERVICE

    I, Jonathan M. Horne, hereby certify that on 18th day of July, 2018, a copy of this document was filed through the ECF system which will be send electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and also by first class mail to:

| | |
|---|---|
| Clarence P. Owens<br>1009 Greenhurst Road<br>Winston-Salem, NC 27104 | Joel Rosen, Esq.<br>Rosen Law Office, P.C.<br>204 Andover St., Suite 402<br>Andover, MA 01810<br>    *Counsel to Clarence P. Owens* |

                                */s/ Jonathan M. Horne*
                                Jonathan Horne, Esq., BBO No. 673098
                                Murtha Cullina LLP
                                99 High Street
                                Boston, Massachusetts 02110
                                617-457-4000 Telephone
                                617-482-3868 Facsimile
                                jhorne@murthalaw.com

9315720v1